SCHLUTER v. GENTILLY TERRACE CO.

(June 4, 1928.    Opinion and Decree.)
(June 18, 1928.    Rehearing Refused.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Sales—Par. 36, 62, 63, 324.**
Under Civil Code, Arts. 1935, 2117 provisions in contract of sale of land that vendor could retake land and at the same time retain installments already paid was void.

2. **Louisiana Digest—Sales—Par. 324, 334.**
Where buyer had defaulted in payments, seller could under Civil Code, Arts. 2045, 2046, cancel agreement, but could not retain amounts paid.

Appeal from Section "C," First City Court. Hon. Wm. V. Seeber, Judge.

Action by Paul Schluter against Gentilly Terrace Co.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Prowell, McBride, and Ray, of New Orleans, attorneys for plaintiff, appellant.

Daly and Hamlin, of New Orleans, attorneys for defendant, appellee.

JONES, J.  Plaintiff sues for two hundred sixty ($260.00) dollars, alleging as follows:

On November 9, 1914, he contracted to purchase from defendant three lots of

ground in Gentilly Terrace for the price and sum of eighteen hundred ($1800.00) dollars, fifty ($50.00) dollars cash and fifteen ($15.00) dollars each month thereafter, said deferred payments being represented by 117 promissory notes for fifteen ($15.00) dollars each; a bond for deed was signed by both parties; he paid fifty ($50.00) dollars cash and also fourteen notes of fifteen ($15.00) dollars each, making a total of two hundred sixty ($260.00) dollars; the bond for deed provided that upon failure to pay any of the monthly installments when due that the defendant should have the right to appropriate as liquidated damages all the money paid in by him. On April 14, 1922, after plaintiff had failed to make several payments, defendant notified him that if he did not pay thirty days from that date it would exercise its option under the bond and appropriate the amount paid in by plaintiff as liquidated damages.

At the end of thirty days the defendant appropriated the amount of two hundred sixty ($260.00) dollars paid in by plaintiff on the contract, and sold the property to another party.

The defendant answered admitting the contract, the payments, the appropriation of the money and the sale of the property to the third party. Defendant set up as a special defense that plaintiff had abandoned his contract and voluntarily surrendered his money, and that actions of plaintiff in surrendering what he paid in on his contract had cost defendant in taxes and interest damages totaling six hundred fifty and 19-100 ($650.19) dollars.

There was judgment in favor of defendant dismissing plaintiff's suit, and plaintiff has appealed.

The evidence shows that defendant on January 31, 1917, demanded further cash from plaintiff who had failed for several consecutive months to make the promised payments.

On February 4, 1917, plaintiff replied as follows:

"Gentilly Terrace Co.,
"801 Maison Blanche Bldg.,
"Gentlemen:
   "As I have surrendered all I paid on these lots, I consider the matter closed."

Defendant answered as follows:

"New Orleans, La.
"February 6, 1917.
"Paul Schulter, Esq.,
"823 Aline Street,
"New Orleans, La.
"Dear Sir:
   "We beg to acknowledge receipt of your favor of 4th inst., and note your statement that you have surrendered all that you have paid on your lots and that you consider the matter closed. If you will read your bond for deed you will find that you have no such option. We entered into this agreement with you in perfect good faith and we expect and insist that you carry out your part of same. You must, no doubt, realize that if we are forced to place this matter into the hands of our attorneys, that it will only mean additional cost to you, and we trust, therefore, as we have said before, that you will not force this step upon us, but that you will call in during this week and make satisfactory arrangements with us. Failing in this, we shall instruct our attorneys to enter suit against you on Monday, the 12th instant.
           "Yours truly,
      (Signed) "R. E. E. DeMontluzin,
              "Secretary-Treasurer."

On February 13, 1917, defendant threatened suit. On August 16, 1921, defendant made demand upon plaintiff for payment of

the city taxes on the lots for the year 1921, amounting to thirty-seven and 14-100 ($37.14) dollars, an obligation which plaintiff had assumed in the agreement to sell, beginning on and after January 1, 1914.

On March 27, 1922, defendant notified plaintiff that he was then six years' delinquent in his payments, and, unless a substantial payment was made by April 10, 1922, the company would be forced to cancel its contract with him.

On April 14, 1922, defendant wrote to plaintiff the following letter:

"Dear Sir: Referring to the bond for deed made to you by this company on November 9, 1914, for lots Nos. 34, 35 and 36, in square No. 25 of Gentilly Terrace subdivision of this city, we beg leave to notify you that as you have failed to make payments agreed by you in said bond for deed to be made, to-wit, those which fell due on June 1, 1916, and on the first day of each month thereafter until the present time, we hereby exercise the option given us in said bond for deed to forfeit as liquidated damages, for your failure to make such payments, all payments heretofore made by you prior to your default.

"This is to give you the 30-day notice of your election to take such action as provided in said bond for deed, and we further advise you that at the expiration of the 30 days, we shall return to you all of the unpaid notes given by you, mentioned in said bond; or, if before the expiration of the 30 days you desire to accede to the within action, we shall return to you the unpaid notes at once.

"If you wish within the 30 days to pay the delinquent notes and interest thereon, the contract will remain in full force."

On May 15, 1922, defendant addressed the following letter to plaintiff:

"Dear Sir: Inclosed herewith you will find 103 promissory notes, being Nos. 15 to 117, inclusive, dated November 9, 1914, being part of a series of notes given by you to the order of this company in connection with a certain bond for deed for lots Nos. 34, 35 and 36, in square No. 25 of Gentilly Terrace subdivision of this city, and referred to in our letter to you of April 14, 1922, as being the unpaid notes to be returned to you. Please take note that the return of these notes to you completes the cancellation by us of the agreement existing between us."

While plaintiff testified that he had no recollection of receiving the letters mailed to him and dated March 27, 1922, April 14, 1922, and May 15, 1922, he does not deny positively that he received them.

On October 28, 1925, plaintiff made a tender to defendant of twenty-six hundred ($2600.00) dollars cash, the amount he calculated as then due under the bond for deed; but the tender was refused by defendant.

On the next day, October 29, 1925, plaintiff sued defendant for specific performance, or in the alternative for two thousand, three hundred eighteen ($2,318.00) dollars, alleged damages caused him by failure of defendant to deliver the lots.

On October 31, 1927, the Supreme Court in Suit No. 27,798, 114 Sou. Rep. 586, affirmed the trial court and dismissed this suit for specific performance, for laches and want of proper tender.

In the course of the opinion the Court uses the following language:

"Plaintiff cannot be permitted to play the role of 'watchful waiting' all these years without performing his obligation and to reap, at this late date, the benefit of it in speculative values."

Shortly thereafter this suit was filed for restitution.

In the case of Heeb vs. Codifer & Bonnabel, 162 La. 139, 110 So. 178, where suit was brought for value of improvements and also for amount paid in on a bond for deed, containing the exact provision embodied herein, the Supreme Court

gave judgment for the amount paid in and also for the value of the improvements.

In the course of the opinion the Court uses the following language:

"We agree with the district judge that the forfeiture clause in the agreement was null and void because not warranted in law, was arbitrary, unreasonable, and without consideration. The option granted to the vendor to cancel the agreement to sell in case the purchaser defaulted in any of the payments was but declaratory of a legal right which the vendor has in every sale or agreement to sell.

" 'A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagement.' C. C., Art. 2046.

" 'The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.' C. C., Art. 2045."

In Alfortish vs. Pailet, No. 7850 of C. of Ap. (Orleans), where the facts were similar to the present, this Court held that the seller might sue for dissolution of the sale, if the buyer did not pay the price, but that he could not keep both the money and the thing sold.

In the course of the opinion the following language is used:

"The same reason for which the vendor cannot demand the price of sale, if he refuses delivery prevents him from keeping the portion of the price he has received: want of consideration. It would be manifestly unconscionable for him to retain both the thing sold and the price paid." Daumois vs. Leeds, 2 La. 360; Burthe vs. Donaldson, et al., 15 La. 390.

R. C. C. 2045 (3040): "On principle, if a contract is rescinded by the vendor even for the vendee's default, the vendor should restore that which he has received upon it." 2 Sutherland on Damages, p. 232; 30 Cyc. 1244; Poche vs. N. O. Home Ins. Co., 52 La. Ann. 1291, 27 So. 797.

But it is said that such is the letter of the contract and the defendant 'craves the penalty and forfeit of his bond.'

That may be but the law of Louisiana will not permit the execution of such a bond and strikes it with nullity for two reasons.

R. C. C., Art. 1893, says:

"An obligation without a cause can have no effect."

Art. 1896:

"By the cause of the contract in this section is meant the consideration or motive for making it, etc. * * *."

Art. 1929 (1935) of the Civil Code declares:

"* * * the damages due for delay in the performance of an obligation to pay money are called interest, the creditor is entitled to these damages without proving any loss and whatever loss he may have suffered, he can recover no more;

* * *

"For these reasons the forfeiture clause is illegal and void."

A similar conclusion was reached by this Court in Sherer-Gillett Co. vs. Wm. J. Bennett, No. 8314, decided June 30, 1922.

Defendant's able attorney seeks to modify the effect of these decisions, which would ordinarily be controlling on this Court by the following two contentions:

(1) That plaintiff had cancelled his bond for deed by his letter of February 4th, quoted above.

(2) That whether the above contention be true or not the Supreme Court had so decided and this Court was necessarily bound thereby.

In answer to the first contention we deny that one party to a commutative contract can cancel the agreement at his pleasure. Such a cancellation requires mutual consent, a meeting of both minds. Here there was no such consent for defendant specifically refused to be a party to it and in its reply to plaintiff's state-

ment that he had abandoned his payments and considered the matter closed, defendant wrote immediately refusing to recognize any such abandonment, denying its legality and insisting upon its rights to further payments. Thus, offer to cancel having been made and refused, it vanishes like the witches of McBeth into airy nothingness.

That such was the legal contention of defendant throughout this long period is further shown by their repeated letters, after refusal of plaintiff's offer, either demanding payment of taxes or additional installments, finally culminating in their letter of April 14th, wherein they treat the contract as still binding, but declare their intention to exercise their contractual right and impose the penalty of forfeiture of past payments within thirty days from date, unless further remittance was made.

To hold that one party to a contract could thus change its status to suit momentary whims would be grossly inequitable and plainly illegal for reasons fully set forth above.

In answer to the second contention of defendant, we reply that we do not interpret the Supreme Court decision as holding that plaintiff's letter of February 4, 1917, was an accepted cancellation of the contract. The Court in concluding its opinion after refusing specific performance said:

"No demand has been made by plaintiff in his petition for the restitution of the part of the purchase price paid by him."

This language plainly shows that the Court would have considered such a demand, had one been made and that it did not hold such a demand foreclosed.

But even if the contract be considered cancelled, the decisions quoted above show that plaintiff would still be entitled to return of his money. All of them distinctly so hold, after full consideration—renunciation of right granted under an illegal contract does not constitute a waiver of claims for amount paid thereunder.

As defendant does not plead its alleged damage by way of offset or compensation and as he does not pray for any judgment thereon, we cannot consider that claim herein.

For above reasons the judgment is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of Paul Schluter, plaintiff, and against defendant, Gentilly Terrace Company, in the sum of two hundred sixty ($260.00) dollars, with legal interest from April 14, 1922, and all costs.